IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CLARENCE BRITTEN, #Y32384, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 22-CV-409-SMY |
| | ) |
| ANTHONY WILLS, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Clarence Britten, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed the instant lawsuit pursuant to 42 U.S.C. § 1983. He claims the defendants were deliberately indifferent to his serious medical and mental health needs at Menard Correctional Center, in violation of the Eighth Amendment (Doc. 1).

The case is now before the Court for consideration of the motion for summary judgment filed by Defendants Anthony Wills and Carri Morris (Docs. 62, 63). Plaintiff filed a response in opposition (Doc. 66).[1] For the following reasons, the motion is **GRANTED**.

## Factual Background

The following relevant facts are undisputed unless otherwise noted: At all relevant times, Plaintiff was incarcerated at Menard Correctional Center. (Doc. 1; Doc. 63-1 at p. 9, Lines 10-13). At all relevant times, Defendant Anthony Wills was the warden of Menard (Doc. 1).

---

[1] Plaintiff's response brief is 3 pages plus an additional 37 pages in his memorandum in support. These page totals violate Local Rule 7.1(a)(3) which limits briefs to 20 double-spaced typed 12 font pages unless leave of Court is granted. Plaintiff did not seek leave of Court to file a brief in excess of the Local Rule page limit. Although Plaintiff violated the Local Rules, the Court will consider the response and decide the motion for summary judgment on the merits.

Defendant Carri Morris was at all relevant times a licensed clinical social worker at Menard (Doc. 63-2).

Upon his arrival at Menard, Britten was placed in restrictive housing due to his conduct at a previous facility, Pontiac Correctional Center (Doc. 66, p. 548). Britten has been diagnosed with intermittent explosive disorder, impulse control disorder, antisocial personality disorder, post-traumatic stress disorder, bipolar disorder, and unspecified depressive disorder (Doc. 66, p. 211). His condition causes paranoia, restlessness, anxiety, and suicidal ideations (Doc. 63-1, p. 19). As of August 2, 2022, Britten has been transferred from Menard and is currently housed at Pontiac Correctional Center. *Id.* at pp. 9-10, Lines 22-24 and 1).

During Britten's time at Menard, he received treatment from both qualified mental health professionals ("MHPs" or "MHP") and psychiatrists that prescribed medications for his conditions and provided psychiatric sessions that would last about an hour each session (Doc. 63-1, p. 17; Doc. 63-1, p. 86 at Lines 15-19). He was also on crisis watch at least twenty times while at Menard, and while on crisis watch, was seen daily by mental health staff (Doc. 63-1, pp. 81-82).

Britten's mental health records for the period February 2021 to March 2022 span over 1,200 pages (Doc. 63-3). These records contain over 35 mental health treatment plan updates in which a MHP and psychiatrist reviewed Britten's diagnoses, medications, and behaviors, and altered and/or updated his treatment plans (Doc. 63-3, pp. 3165-3462). The records also include several mental health progress notes reflecting Britten's refusal to take medications and to attend therapy sessions (Doc. 63-3). Britten admits that he refused to attend groups if he had another program scheduled at the same time (Doc. 63-1, p. 94 at Lines 3-6).

Sherri Buettner, a licensed professional counselor ("LPC") at Menard was assigned as

Britten's MHP (Doc. 63-1, p. 17; Doc. 63-3).[2]  Carri Morris was not Britten's psychiatrist.  She did not complete diagnostic evaluations of Britten's mental health diagnoses or prescribe him medications (Doc. 63-2, ¶2).  Morris conducted on-site clinical reviews, structured evaluations and reviews of diagnostic and treatment consideration for individuals in custody, and utilized her independent judgment to evaluate treatment plans and their implementation.  *Id.* at ¶1.  Britten had three psychiatrists that he saw almost on a monthly basis, including Dr. Thena Poteat, Dr. Farzana Alam, and Dr. Sharad Garbharran (Doc. 63-3, pp. 3184-3188, 3291-3295, 3759-3763).

Britten testified that his mental health treatment was inadequate because (1) he was not allowed to attend group therapy due to forged signatures on refusal forms; (2) security staff would interfere with his ability to go to group or on crisis watch; (3) mental health care staff did not refer him to a higher level of care; (4) he did not see eye to eye with a particular mental health care provider; (5) he received in adequate care after he self-harmed on crisis watch; and (6) security staff would not consider his mental health status when issuing disciplinary tickets (Doc. 63-1, pp. 34-35).  He also believes that Buettner was not providing him proper treatment regarding his mental health condition (Doc. 63-1, p. 17).

Britten filed a formal grievance on March 29, 2021 complaining he was "deprived of an adequate delivery of mental health services" (Doc. 63-1, p. 18; Doc. 66, p. 432).  He alleged that Buettner would not recommend him for a higher level of mental health treatment at Menard.  *Id.* his initial grievances were denied on the grounds that he had received appropriate treatment for his mental health needs (Doc. 66, p. 432).  Britten then began to blame Wills and Morris for his inadequate care at Menard due to their authority to review inmate grievances (Doc. 63-1, pp. 18-19).

---

[2] Buettner was originally named as a defendant but was voluntarily dismissed by Britten on January 3, 2024 (Doc. 70).

Britten filed three more grievances from April 3, 2021 to November 8, 2021, complaining that he was receiving inadequate mental health treatment and that he requested to be moved to the residential treatment unit for better care (Doc. 66, p. 432). These grievances were dismissed for being duplicative of his original grievance. *Id.* at pp. 436-442.

Britten submitted an additional grievance on November 16, 2021 raising similar concerns. *Id.* at p. 444. A grievance officer responded on January 13, 2022, explaining that Morris had reviewed Britten's chart and his concerns were being discussed by his treatment team. *Id.* at p. 447. None of Britten's grievances mention that he was not allowed to attend group therapy due to forged signatures on refusal forms, that security staff was interfering with his ability to go to group or crisis watch, that he was receiving inadequate care after self-harm on crisis watch, or that security staff was not considering his mental health status when issuing disciplinary tickets (Doc. 63-1, p. 42 at Lines 10-19, p. 45 at Lines 18-24; pp. 53-54 at Lines 20-24 and 1-3, p. 57 at Lines 20-24).[3]

Britten named Morris as a defendant in this case because he believed she was not providing adequate mental health treatment, was allowing security staff to interfere with his treatment, and should have referred him to a higher level of care (Doc. 63-1, p. 11 at Lines 12-24). He he voiced these complaints to Morris in person and she should have known about his issues because of her job position. *Id.* at p. 53 at Lines 4-19.

Britten named Wills as a defendant in this case because of his supervisory position at Menard (Doc. 63-1, p. 10 at Lines 14-22). Wills had no role in providing mental health treatment and only reviewed Britten's grievances regarding mental health treatment. *Id.* at p. 18 at Lines 8-19.

---

[3] Britten claims he raised verbal allegations suggesting that his signature on various documents that suggested his choice to forgo any service was forged (Doc. 63-1, p. 19).

**Discussion**

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue as to any material fact — that is where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986). If the evidence is merely colorable or is not sufficiently probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986). Any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004).

The Eighth Amendment prohibits deliberate indifference to the serious medical and mental health needs of prisoners. *Machicote v. Roethlisberger,* 969 F.3d 822, 827 (7th Cir. 2020) (citing *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)). A plaintiff asserting a claim of deliberate indifference to medical and mental health needs must offer evidence that he suffered (1) from an objectively serious medical condition, and (2) that the defendant actually knew of and disregarded a substantial risk of harm. *Murphy v. Wexford Health Sources Inc.,* 962 F.3d 911, 915 (7th Cir. 2020). In other words, "a plaintiff must show that officials were aware of the facts from which an inference could be drawn that a serious risk to inmate health exists, and they must also draw the relevant inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). It not enough to show that prison officials should have been aware of the risk of harm. *Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006).

A medical condition is objectively serious if it "has been diagnosed by a physician as mandating treatment" or is "so obvious that even a lay person would perceive the need for a doctor's attention." *Perry v. Sims*, 990 F.3d 505, 511 (7th Cir. 2021) (*quoting Greeno v. Daley*,

414 F.3d 645, 653 (7th Cir. 2005)). An inmate may establish deliberate indifference to such a condition by demonstrating that the treatment he received was "blatantly inappropriate." *Greeno*, 414 F.3d at 654.

Britten claims he should have been placed on a higher level of care while at Menard and denies that he chose to forego any mental health service during his time there. He also suggests that his signature on any documents expressing a choice to forego mental health service was falsified. It is undisputed that Britten suffered from an objectively serious mental health condition during the relevant period. Thus, the question is whether the defendants knew of but disregarded the risks associated with his condition. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

No evidence has been presented to support Britten's claim that Carri Morris was deliberately indifferent to his mental health needs. Rather, the evidence demonstrates that Morris did not control the level of care provided to Britten. While Britten discussed his complaints verbally with Morris, her job duties were on-site clinical reviews, structured evaluations and reviews of diagnostic and treatment consideration for individuals in custody. Morris did not provide a diagnostic evaluation for Britten, prescribe his medications, or determine the course of his mental health treatment while he was housed at Menard. Her job was to ensure that Britten saw at least one of his treating psychiatrists, that he regularly visited mental health staff as evidenced in his mental health progress notes, and that his mental health treatment plans were updated by qualified mental health professionals. She did not have the authority to order specific mental health treatment for Britten. On this evidence, no reasonable jury could conclude that Morris was deliberately indifferent to Britten's mental health needs. *See Johnson v. Doughty*, 433 F.3d 1001, 1011 (7th Cir. 2006). Therefore, Britten's claims against Morris do not survive summary judgment.

Similarly, the evidence on the record cannot support a finding that Wills was deliberately indifferent to Britten's mental health needs. There is no evidence that Wills was personally involved in any treatment or decisions regarding Britten's mental health. His only involvement was reviewing Britten's grievances regarding his mental health treatment. Britten testified that he only named Wills due to his supervisory role at Menard. (Doc. 63-1 at p. 10, Lines 14-22). No evidence has been presented that Wills knew of any of Britten's complaints regarding a forged signature, and none of the grievances filed by Britten raised any concerns regarding his inability to attend group sessions or that security staff hindered him. If there is "no personal involvement by the warden [in an inmate's medical care] outside the grievance process," that is insufficient to state a claim against the warden. *Gevas v. Mitchell*, 492 Fed. Appx. 654, 660 (7th Cir. 2012). Accordingly, Britten's claims against Wills are unsupported by the record and will be dismissed on summary judgment.

Finally, Britten's claim for injunctive relief is moot as he was transferred from Menard Correctional Center to Pontiac Correctional Center on August 2, 2022 (Doc. 63-1 at pp. 9-10, Lines 22-24 and 1). Once a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless "he can demonstrate that he is likely to be retransferred." *Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir. 1988). Britten has presented no evidence that he is likely to be transferred back to Menard. Accordingly, his claim for injunctive relief is moot and will also be dismissed.

**Conclusion**

For the foregoing reasons, the Motion for Summary Judgment (Docs. 62, 63) is **GRANTED**. As no claims remain, the Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

**DATED: March 31, 2024**

**STACI M. YANDLE**
**United States District Judge**